UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| APRIL ROSE GOLDSBERRY, | ) | |
| Plaintiff, | ) ) ) | No. 6:18-CV-204-REW |
| v. | ) ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | OPINION AND ORDER |
| Defendant. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

April Goldsberry appeals the Commissioner's denial of her application for Supplemental Security Income (SSI) benefits.[1] The parties filed dueling summary judgment motions. The Court, having considered the full record under governing law, **GRANTS** the Commissioner's motion (DE #14) and **DENIES** Goldsberry's motion (DE #12) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

---

[1] Goldsberry asserts that she submitted "a Title II application." DE #12-1, at 1. The Acting Commissioner, on the other hand, contends Goldsberry's application fell under Title XVI. *See* DE #14, at 1 n.2. The record supports Defendant. *See, e.g.*, R. at 66, 135. Regardless, the "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at \*3 (6th Cir. Jan. 3, 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at \*3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at \*4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Goldsberry is currently 27 years old. *See, e.g.*, R. at 45. She alleges disability beginning on July 26, 2014. *See* R. at 135. Goldsberry applied for benefits in August 2016. *Id.* The SSA denied her claim initially on December 20, 2016, *see* R. at 66-69, and upon reconsideration on March 21, 2017. *See* R. at 73-75. Goldsberry then filed a written request for a hearing in early May 2017. R. at 80-81. Administrative Law Judge (ALJ) Joyce Francis held a hearing on the application on November 30, 2017. R. at 26-43. At the hearing, attorney Ronald Cox represented Goldsberry. R. at 26. Claimant and impartial vocational expert Jackie Rogers testified. R. at 27-42. The ALJ subsequently denied Goldsberry's claims on March 28, 2018. R. at 10-19. The Appeals Council denied review, and thus upheld the ALJ's decision, on June 14, 2018. R. at 1-3.

The ALJ made several particular findings in the required sequence. She determined that Goldsberry did not engage in substantial gainful activity from August 9, 2016, through the date of decision. R. at 15. The ALJ next determined that Goldsberry had a severe impairment. *Id.* However, ALJ Francis then found that Goldsberry did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. at 15-16. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 16-18. Although ALJ Francis found that Goldsberry "has no past relevant work," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Goldsberry] can perform[.]" R. at 18-19. Based on these considerations, the ALJ ruled that Goldsberry was not under a disability from August 9, 2016, through

the date of decision. *See* R. at 13, 19. Unsatisfied with the result of the SSA's administrative process, Goldsberry turned to federal court for review.

## II.   ANALYSIS

### A.   *Standard of Review*

The Court has carefully read the ALJ's decision, the transcript of the administrative hearing, and the entire administrative record. The Court has turned every apt sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* DE #11 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d

284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Acting Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Acting Commissioner, if the claimant cannot perform past relevant work, the ALJ

determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

  B. *The ALJ did not reversibly err.*

Goldsberry makes two broad arguments: that substantial evidence does not support the ALJ's disability determination, DE #12-1, at 5-9, and that the ALJ erred in evaluating Claimant's subjective complaints of pain, *id.* at 9-10. The Court evaluates each in turn.

    **1. Substantial evidence supports the ALJ's disability determination.**

Goldsberry's first argument has a variety of sub-parts; the Court organizes and evaluates them as best it can.

**Sub-part 1—The ALJ did not fail to address the entirety of the medical evidence.**

Claimant expresses the first sub-argument in various ways. She broadly contends, for instance, that "the combined effects of [her] physical and mental impairments[] reflect that she could not perform a wide range of even sedentary work on a regular and sustained basis," that "the ALJ failed to properly evaluate the medical evidence that had been submitted in this claim," that she "suffers from additional impairments which the ALJ has failed to set forth in her decision," that the ALJ "failed to properly address the entirety of the medical evidence in making her determination[,]" and that the ALJ failed to address "numerous medical records establishing her on-going treatment for" certain "very significant physical and mental impairments . . . which affect her ability to perform even sedentary work on a sustained basis." DE #12-1, at 6-7.

The Court rejects out-of-hand these generalized, conclusory arguments, unburdened by citation to the record or supporting authority. ALJ Francis affirmed that she gave "careful consideration" to "all the evidence" and "the entire record." R. at 13, 15. Goldsberry's baseless assertion to the contrary is no basis for relief. Likewise, Claimant's nonspecific arguments regarding unnamed "additional impairments" and "very significant physical and mental impairments" obviously earn no respite; the Court could not reverse the ALJ's decision based on alleged infirmities Goldsberry herself declined to identify. Vaguely alluding to "the combined effects" of her conditions or "numerous medical records establishing her on-going treatment," sans citation (or even method of intelligible identification), is also deficient. Claimant gets no relief on sub-argument one. *See, e.g.*, *United States v. Crumpton*, 824 F.3d 593, 619 n.7 (6th Cir. 2016); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *Howard v. City of*

*Girard*, 346 F. App'x 49, 52 (6th Cir. 2009) (citing cases); *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999); *Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997).

**Sub-part 2—The ALJ did not err in evaluating Claimant's testimony.**

Next, Goldsberry contends that her "own testimony establishes that she is disabled based on his [sic] inability to sit, stand, or walk for only shorts periods and her inability to lift any significant weight." DE #12-1, at 6. That lone sentence is the extent of Claimant's argumentation on this point.

The Court, as above, rejects this cursory, unsupported argument. Goldsberry cites no proof or law. The ALJ thoroughly supported the RFC determination and, for specific and detailed reasons, found Claimant's testimony "only partially consistent with the medical evidence and other evidence in the record." R. at 17-18. Goldsberry, in one passing remark, provides no reason to call ALJ Francis's careful treatment into doubt. The Court also rejects a more developed version of this argument below, a discussion the Court incorporates here, to the extent applicable.

**Sub-part 3—The ALJ did not misinterpret reports of non-examining doctors.**

Third, Goldsberry contends that ALJ Francis "completely misinterpreted the reports of" Drs. Sudhideb Mukherjee and Timothy Gregg (state agency reviewing doctors), specifically faulting the ALJ for considering the reports due to their age relative to Dr. Raju Vora's (the treating physician's) RFC questionnaire. *See* DE #12-1, at 7. Goldsberry also decries the limits Mukherjee and Gregg perceived as inconsistent with "the sedentary finding that the ALJ relied on in making her decision[.]" *See id.* The ALJ found that the agency doctors' opinions "were consistent with the objective tests and medical records." R. at 18. She "gave their opinions great weight when developing the

7

[RFC.]" *Id.* This is permissible, if warranted after the ALJ considers various factors and the whole record. *See, e.g.*, *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 438-40 (6th Cir. 2012). That occurred.

Neither Goldsberry complaint warrants relief. First, apart from the observation that the state agency physicians' opinions were, in fact, older than the most recent of Vora's, Goldsberry does not state *why* that matters, or *why* the relative age of the reports militates against their comparative evidentiary weight. [Factually, Gregg did not issue his opinion "around December 2016." *See* DE #12-1, at 7. It was March 21, 2017. R. at 63-64.] Reports from late 2016 – early 2017 are obviously relevant to Goldsberry's claim of disability submitted in August 2016.[2] Additionally, Judge Francis, well aware of Goldsberry's hospitalization in November 2017, reasonably discounted Vora's November 2017 RFC form for the reasons explained in sub-part 4.

The Court simply sees no substance to Goldsberry's second argument—that the reviewers' opinions are inconsistent with the ALJ's "sedentary finding." Mukherjee and Gregg each, in fact, made sedentary findings. R. at 52, 63. Each report is materially consistent with the other, *compare* R. at 49-53 (Mukherjee)*, with* R. at 59-63 (Gregg), as well as with the definition of "sedentary work." *See* 20 C.F.R. §§ 416.967(a);

---

[2] Further, although Goldsberry makes no argument on these fronts, the Court notes other law fairly supportive of the ALJ's treatment. *See, e.g.*, *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) ("Even if Dr. Hernandez's [(a state-agency consultant's)] RFC was completed without knowledge of [certain medical] issues, however, the record reflects that the ALJ considered them."); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (affirming decision where "state agency physicians' opinions . . . did not account for changes in [the claimant's] medical condition" but where the ALJ "considered the medical examinations that occurred after [the] assessment . . . and took into account any relevant changes in [the claimant's] condition"); *Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111 (N.D. Iowa 2012); *Cook v. Astrue*, 629 F. Supp. 2d 925, 932-33 (W.D. Mo. 2009).

8

404.1567(a). The ALJ sensibly incorporated the substantiated opinions into her ultimate RFC determination. *See* R. at 16-18.

The Court thus rejects Claimant's consultant-based argument. The ALJ rationally, for the stated reasons, relied on the reviewers' opinions in this scenario. Indeed, no single medical source is alone necessary or conclusive in determining RFC; thus, an opinion from a non-examining source may be the basis for the ALJ's opinion, even if it conflicts with an examiner's. *See Blakley*, 581 F.3d at 409; *Gayheart*, 710 F.3d at 379 ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'"); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error."). ALJ Francis's decision to lean on skilled and experienced physician-reviewers, on this record and under the applicable standard of review, was not error.

The full record further supports Judge Francis's findings. [The Court may, of course, consider pieces of record evidence "even if the ALJ failed to cite" them. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).] The Pineville Community Hospital, in 2016, rated Goldsberry's systems "normal" across the board. R. at 225. Appalachian Regional Healthcare (ARH), in Harlan, noted "no active disease" in August 2016. R. at 251; *see also* R. at 450 ("without complications"). JHL Jewish Hospital,

9

consulting with Dr. Vora, envisioned effective "management of" her Crohn's disease and found her to improve clinically "with no fever and no other significant complaints." *See, e.g.*, R. at 387-88. At Barbourville ARH, Goldsberry refused a wheelchair. R. at 460. Even around Dr. Vora, Goldsberry was, on occasion, "asymptomatic" and wanted "to go home." R. at 524. In July 2016, Goldsberry was in "no acute distress" and reported being "independent" in activities of daily living. R. at 593. In August 2017, Dr. Vora reported "some improvement" in Goldsberry's condition and that her Crohn's disease was "in partial remission." R. at 617-19. Vora merely contemplated "consider[ing] other biologic agents" in the future "to see if [they] can help." R. at 617. As late as November 2017, upon discharge, Vora characterized Goldsberry as "stable." R. at 775. ALJ Francis defensibly weighed the evidence, substantially siding with the agency physicians' opinions, and Claimant identifies no remediable error.

**Sub-part 4—The ALJ gave defensible weight to the opinions of Goldsberry's treating physician.**

Fourth, Goldsberry argues that the ALJ failed "to give proper weight to the opinions of the claimant's treating physician, Dr. Vora." DE #12-1, at 7-8. After parroting Dr. Vora's conclusions, Claimant contends, again without citation, that the "ALJ should give greater weight to the claimant's treating physician who is taking care of [her] and seeing her on a regular basis." *Id.* at 8.

The ALJ gave "no weight" to Dr. Vora's opinion that Goldsberry "was totally disabled" because "that finding is reserved for the Commissioner." R. at 18. "Likewise," the ALJ gave "little weight to the limitations outlined in the [RFC] questionnaire [Dr. Vora] completed as this is a checkbox form for which [he] provided no support from his limited treatment records for each of the restrictions." *Id.*

ALJs generally give "greater deference" to "the opinions of treating physicians than to those of non-treating physicians." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Thus, when "discounting treating physicians' opinions," ALJs must provide good reasons—"reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 242-43; *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (conditioning deference to treating physician's opinion on the opinion being "supported by clinical and laboratory diagnostic evidence not inconsistent with other substantial evidence in the record"), *cert. granted on unrelated sub-issue sub nom. Biestek v. Berryhill*, 138 S. Ct. 2677 (2018); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 544 (6th Cir. 2004).

ALJ Francis's first point is correct. She reasonably gave Dr. Vora's opinion that Goldsberry is "totally disabled"—a legal determination reserved to the Commissioner—no weight. *See* R. at 776, 800; 20 C.F.R. §§ 416.920b(c)(3)(i); 416.927(d)(1)-(3); 404.1527(d)(1); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009); *Bass*, 499 F.3d at 511.

The ALJ likewise rationally deemed the responses on Dr. Vora's "checkbox form" entitled to little weight. *See* R. at 795-99 (Form). Goldsberry offers no specific argument as to the ALJ's reasoning on this topic, instead simply repeating the responses and baldly asserting error. This is unpersuasive. A "treating physician's opinion will not be given controlling weight unless it is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Heston*, 245 F.3d at 536; *Biestek*, 880 F.3d at 785; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

As recounted, ALJ Francis found the limitations expressed in Vora's RFC form (which itself featured no details or elaboration) unsupported by treatment records—a far cry from the Sixth Circuit's demand for opinions "well-supported" by medical proof. *See* R. at 18. [For instance, there is no apparent medical record support—Goldsberry certainly identifies none—for Vora's diagnosis that Goldsberry is only able to lift and carry less than 10 pounds occasionally. R. at 798.] Figures seemingly plucked from mid-air on a form explicitly labeled an RFC questionnaire are rightfully subject to ALJ scrutiny.

Judge Francis also fairly discounted Vora's RFC form because, apart from the many unsupported areas, it further contains critical inconsistencies with contemporaneous treatment records. *Compare, e.g.*, R. at 777 ("denies any pain") *and* R. at 775 (calling Goldsberry "stable")*, with* R. at 795 (identifying "abdominal pain" as one of Goldsberry's symptoms) *and* R. at 796 (despite noting Goldsberry's denial of pain, stating that her "pain" is "severe enough to interfere with attention and concentration . . . frequently"). Rather than "pain," Vora's records often merely reference "tenderness." Vora, additionally, included critical qualifiers, such as "meds *currently* not controling [sic] symptoms" and "patient *can* experience generalized abdominal pain." R. at 795 (emphases added); *see also, e.g.*, *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008). Many of Vora's conclusions also conflict with substantial evidence in Goldsberry's treatment history, based on the pages cited *supra*. *See also, e.g.*, R. at 305 (no leg pain). The ALJ noted the disconnect between Vora's "limited treatment record"[3] and provided good reasons, on both points and under the applicable standard, for her weighing of Dr. Vora's opinions.

---

[3] The handwritten records are of debatable legibility.

**Sub-issue 5—The ALJ did not err concerning classification of Crohn's disease.**

Goldsberry's final argument confounds the Court. She faults the ALJ for "not finding that the claimant had additional impairments other than IBS," specifically, "crohn's disease." DE #12-1, at 9 (no capitalization in original). ALJ Francis obviously accounted for Goldsberry's Crohn's disease in shaping the applicable RFC. *See* R. at 16-17. Equating the ailments, ALJ Francis explicitly noted that the "irritable bowel disease," which she labeled a severe impairment, is "also referred to in the record as Crohn's disease." R. at 15-16; *see also* R. at 17 (ALJ describing how she "accommodated the claimant's irritable bowel disease (Crohn's disease) and related pain" in formulating the RFC).[4] Judge Francis was obviously aware of Goldsberry's Crohn's disease, treated the condition as an included impairment, and crafted the RFC with the disease as a consideration. There is no factual or legal basis for Claimant's final volley.

For these reasons, ALJ Francis properly supported each challenged aspect of the decision, and the Court entirely rejects Goldsberry's first category of argumentation.

> **2.  The ALJ did not err in evaluating Goldsberry's subjective complaints of pain.**

---

[4] Additionally, the ALJ affirmed that she considered "all symptoms" in formulating the RFC, R. at 16, thus separately (apart from the explicit textual references) indicating assessment of Crohn's disease. *See also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). "[I]t is well settled that[] an ALJ can consider all the evidence without directly addressing in h[er] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (internal alteration omitted). Further, the "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Per *Pompa*, because the ALJ indisputably found one "severe impairment," whether she so classified another condition is legally irrelevant. *See also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) and *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Fairly read, the ALJ treated IBD and Crohn's as synonyms.

13

Goldsberry next argues that the ALJ "failed to properly assess [her] subjective complaints [of pain] as she testified to at the hearing in this matter as well as her ongoing complaints to her physicians." DE #12-1, at 10.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. "However, the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility. Rather, such determinations must find support in the record." *Id.* (internal quotation marks and citation omitted). As Goldsberry recognizes, the "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation removed); *see also Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (affording a credibility determination "special deference because the ALJ is in the best position to see and hear the witness and determine credibility").[5]

Substantial evidence supports the ALJ's treatment of Goldsberry's subjective complaints. ALJ Francis found Claimant's "statements concerning the intensity,

---

[5] As the Acting Commissioner points out, *see* DE #14, at 11, Goldsberry fails to acknowledge SSR 16-3p. The Sixth Circuit has characterized SSR 16-3p as eliminating "the use of the word 'credibility' . . . to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Although SSR 16-3p certainly applies, *see* R. at 16 (ALJ citing it), the Court also, on full consideration, agrees that "the analysis in this case does not turn on which SSR applies." *See* DE #14, at 11. The ALJ evaluated Goldsberry's complaints against the objective medical evidence; she did not judge Goldsberry's character. The ALJ did comply with SSR 16-3p—Goldsberry, misciting the correct rule, makes no contrary argument.

14

persistence, and limiting effects of [her] symptoms only partially consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 17-18.

Those reasons included the following: (1) Goldsberry, despite complaints about "bad stomach and joint pain," having "trouble walking," and "always" being "exhausted," admitted that "she reads, watches television, spends time on the internet, spends time with others, and goes out about once a week." R. at 16; *see also* R. at 30-31 (Hearing Testimony); 182 (describing her TV watching and internet surfing habits); 186 (recounting that she "chat[s] with [her] friends online," "go[es] out once a week," and goes to doctors appointments, the grocery, and "ladies meeting at church"). Claimant further "related that she gets along with others, can pay attention for a long time, finishes what she starts, and can follow written and spoken instruction." R. at 16-17; 187-88 (also stating she gets along with authority figures "just fine," handles changes in routine "ok," and handles stress "fairly well"). The ALJ noted Goldsberry's most recent employment as "a college tutor," which ceased only "because the program ended." R. at 17. A June 2016 "ultrasound of the abdomen" revealed systems within "normal limits." *Id.*; R. at 547. Goldsberry "sometimes" goes to the grocery and to church, and saw at least one movie in 2016. *See* R. at 170. She has "no problem" with personal care. R. at 183. Around the house, Goldsberry reported sweeping and folding laundry. R. at 184. She can pay bills, count change, handle a savings account, and use a checkbook / money orders. R. at 185. These are all valid considerations in this context. *See, e.g.*, *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473-74 (6th Cir. 2014); *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754-55 (6th Cir. 2012).

These factors, as well as the Court's earlier record review, reasonably support the ALJ's assessment of Goldsberry's complaints. *See also, e.g.*, R. at 285 (Dr. Saka finding, in July 2016, that Goldsberry's symptoms did not actually include malaise, also reasonably supporting the ALJ's finding of partial credibility). On review of the totality, the Court concludes that Judge Francis properly evaluated Claimant's statements[6] and complaints in light of the documented medical record.[7]

The Court, too, remains cognizant that the ALJ did not discount Claimant's version wholesale. ALJ Francis, methodically analyzing and comparing proof, instead found Goldsberry's statements "partially consistent" with the medical evidence—a measured assessment, evincing the judge's care and holistic evaluation, that the record vindicates. Indeed, the ALJ specifically "accommodated" Claimant's Crohn's disease and reported pain / dizziness / difficulty walking and balancing—portions of Goldsberry's complaints the Judge Francis found supported—in the RFC in certain specified ways, including imposing additional postural and environmental limitations. R. at 17; *see also* R. at 19 (acknowledging that "additional limitations" impede Goldsberry's "ability to perform all or substantially all of the requirements of [sedentary] work"). A claimant does not become entitled to benefits, *ipso facto*, and does not preclude an ALJ from

---

[6] The Court notes that Goldsberry claimed to have a constant fever, R. at 34 (Hrg.), but even when hospitalized, she was afebrile. R. at 777. Further, she claimed to need a bathroom 20 times per day, *see* R. at 29, but Vora's records (*e.g.*, R. at 655) simply do not confirm that number as a historical marker. Her described sitting capacities sharply differed even from those Dr. Vora espoused. *Compare* R. at 30 *with* R. at 797. These are examples of problems relative to Claimant's own testimony.

[7] Goldsberry purports to have "psychological difficulties" and "new information" that would support a finding of greater testimonial credibility. *See* DE #12-1, at 10. She fails, though, to cite any such proof. Additionally, though Claimant lauds her "testimony" as "uncontradicted in the record," *id.*, the Court has documented the inconsistencies throughout this Opinion. *See Curler*, 561 F. App'x at 475 (affirming when the claimant's "testimony describing her . . . pain contrasted starkly with the medical evidence"); *Torres*, 490 F. App'x at 754-55.

appropriately tailoring an RFC, merely by claiming limitations or pain via in-person testimony that the medical record does not support.

In sum, "[b]ecause the ALJ considered the evidence in the record and provided specific reasons for h[er] credibility findings, h[er] decision is entitled to great deference and is supported by substantial evidence." *Anthony*, 266 F. App'x at 460. ALJ Francis cited to evidence and fully explained the reasons for finding Goldsberry's subjective complaints only partially reliable. The Court declines to second-guess the ALJ's findings on credibility here because they were reasonable and fairly substantiated. *See Bass*, 499 F.3d at 509; *Walters*, 127 F.3d at 531.

## III. CONCLUSION

For the reasons stated, the Court **GRANTS** DE #14 and **DENIES** DE #12. The Court will enter a separate Judgment.

This the 24th day of July, 2019.

Signed By:
*Robert E. Wier*
United States District Judge